B139

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 21-79 |
| v. ) | [UNDER SEAL] |
| ) | |
| SUSAN GILBERT ) | (18 U.S.C. §§ 2, |
| ) | 371, 1347, 1516) |

INDICTMENT

COUNT ONE

The grand jury charges:

FILED

FEB 24 2021

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

GENERAL ALLEGATIONS

Unless otherwise indicated, at all times material to this Indictment:

Background

1. Mount Lebanon Rehabilitation and Wellness Center was a skilled nursing home facility located in Allegheny County, Pennsylvania (hereinafter, "MLRWC").

2. The defendant, SUSAN GILBERT, served as the Administrator of MLRWC from in and around November 2017 to in and around March 2020.

Medicare and PA Medicaid

3. The Medicare program was a federal program established by the Social Security Act of 1965 (codified as amended in various sections of Title 42, United States Code) to provide medical services, medical equipment and supplies to aged, blind and disabled individuals who qualify under the Social Security Act. Medicare was a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

4. Medicaid was a joint federal-state program established to provide health care benefits for certain groups, including the poor and disabled. The Pennsylvania Medicaid Program

("PA Medicaid") was authorized by Title XIX of the Social Security Act, and administered by the Pennsylvania Department of Human Services ("DHS"), previously known as the Department of Public Welfare. Medicaid was a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

5. The Centers for Medicare and Medicaid Services ("CMS"), a component of the United States Department of Health and Human Services ("HHS"), monitored the Medicare and PA Medicaid programs, established requirements for service delivery, quality, funding, and eligibility standards, determined the scope and types of covered services, and set reimbursement rates.

6. To participate in the Medicare program, nursing homes had to be licensed by the state, enter into provider agreements with CMS, and be certified as complying with mandatory federal standards. To participate in PA Medicaid, nursing homes had to enter into agreements with the Commonwealth of Pennsylvania that incorporate the federal requirements for participation as well as applicable state requirements.

7. MLRWC applied for a Certificate of Licensure from the Pennsylvania Department of Health ("DOH") on December 6, 2016. That application listed the facility as being managed by CHMS Group, LLC (hereinafter "CHMS GROUP"). MLRWC received a Certificate of Licensure effective February 1, 2017.

8. On or about January 27, 2017, MLRWC submitted a CMS-855A application to enroll the facility, under its new ownership, in Medicare. That application contained a certification stating that the facility "agree[d] to abide by Medicare laws, regulations and program instructions that apply to this provider." The application also stated that "any deliberate omission, misrepresentation, or falsification of any information . . . contained in any communication

supplying information to Medicare . . . may be punished by criminal, civil or administrative penalties."

9. On or about March 6, 2019, MLRWC submitted a supplemental CMS-855A application identifying a change in ownership. The supplemental CMS-855A application listed defendant, SUSAN GILBERT, as the facility's Administrator.

10. MLRWC entered into a PA Medicaid provider agreement with DHS on or about February 1, 2017. That agreement included certifications that the facility "agrees to comply with all applicable State and Federal laws, regulations, and policies which pertain to participation in the Pennsylvania Medical Assistance Program." The agreement further stated that the "facility agrees that it will allow the Centers for Medicare and Medicaid Services, its agents and its contractor and the Department to conduct unannounced on-site inspections of any and all of its locations, including location where services are provided."

11. MLRWC has received millions of dollars in reimbursements from Medicare and PA Medicaid for the care of its residents.

## DOH Surveys

12. Medicare and PA Medicaid required MLRWC to be periodically inspected by survey teams. HHS has entered into agreements with state health agencies, including, as relevant here, DOH in Pennsylvania, to survey nursing homes in order to monitor and certify facilities' compliance with CMS requirements. As a state survey agency, the DOH was required to observe and determine compliance with Medicare conditions of participation, and to use the methods, procedures, and forms prescribed by HHS.

13. HHS regulations include within the definition of "Employee" of HHS: "Employees of a . . . state agency performing survey, certification, or enforcement functions under [the

Medicare] Act . . . to the extent the requested information was acquired in the course of performing those functions . . . ." 45 C.F.R. § 2.2.

### Staffing Requirements

14. Among other conditions of participation in Medicare and PA Medicaid was that nursing home facilities must have "sufficient" staff to meet residents' needs. 42 C.F.R. § 483.35.

15. Medicare and PA Medicaid regulations also required that a facility "operate and provide services in compliance with all applicable Federal, State, and local laws, regulations, and codes, and with accepted professional standards and principles that apply to professionals providing services in such a facility." 42 C.F.R. § 483.70(b).

16. Pennsylvania regulations governing nursing homes required that nursing homes provide at least 2.7 hours of direct resident nursing care, per resident, per day ("PPD").

17. In conducting annual surveys and periodic surveys in response to complaints, DOH surveyors, acting on behalf of HHS, were required to, among other things, review staffing levels at the facilities being inspected to determine whether the facilities had "sufficient" staffing under federal regulations, *see* 42 C.F.R. § 483.35, and were complying with Pennsylvania's PPD requirements, *id* § 483.70(b).

18. During federally mandated surveys, DOH surveyors required facilities to provide completed forms titled "three-week nursing time schedule" ("three-week staffing sheets"). These forms listed dates for a three-week time period that the DOH surveyor(s) pre-selected. DOH surveyor(s) required facilities to provide the names, license numbers, and the number of hours when nursing staff provided direct care to residents during the pre-selected three-week period.

19. DOH surveyor(s) also required facilities to complete and return forms titled "Nursing Care Hours" ("nursing care hours forms"). This document contained the total PPD for

the three-week period pre-selected by the DOH surveyor that corresponded with the three-week staffing sheet.

## THE CONSPIRACY AND ITS OBJECTS

20. From on or about October 10, 2018, and continuing thereafter to on or about February 20, 2020, in the Western District of Pennsylvania and elsewhere, the defendant, SUSAN GILBERT, knowingly and willfully did conspire, combine, confederate and agree with persons known and unknown to the grand jury to defraud the United States of money and property by impeding, impairing, obstructing, defeating, and interfering with the lawful governmental functions of HHS in the administration of Medicare and PA Medicaid.

## MANNER AND MEANS OF THE CONSPIRACY

21. It was a part of the conspiracy that SUSAN GILBERT and/or other co-conspirators known and unknown to the Grand Jury (hereinafter "other co-conspirators"), directed employees of MLRWC to falsify records to give the appearance that MLRWC met federal and state staffing requirements. Among other things, the defendant, SUSAN GILBERT and/or other co-conspirators, directed administrative and management-level nursing staff, including, among others, the Director of Nursing, the Assistant Director of Nursing, and other administrative staff, to "clock in" for shifts but not actually work. In doing so, MLRWC created falsified timecard documentation that made it appear as though these individuals were providing direct resident care, when in fact they were not in the building and therefore not providing direct resident care.

22. It was further a part of the conspiracy that the defendant, SUSAN GILBERT and/or other co-conspirators caused management-level nursing staff to be paid monetary bonuses to "clock in" for shifts they did not actually work.

23. It was further a part of the conspiracy that the defendant, SUSAN GILBERT and/or

5

other co-conspirators directed MLRWC staff not to clock in and out when they left the facility for their 30-minute lunch breaks. In doing so, MLRWC created falsified timecard documentation that made it appear as though these individuals were providing direct resident care during their lunch breaks, even when they were not in the building and not providing direct resident care.

24. It was further a part of the conspiracy that the defendant, SUSAN GILBERT and/or other co-conspirators directed MLRWC staff to include the hours worked by management-level nursing staff and other administrative staff on three-week staffing sheets provided to DOH, when in fact those employees did not provide direct resident care during the dates and hours listed.

25. It was further a part of the conspiracy that the defendant, SUSAN GILBERT and/or other co-conspirators caused administrative staff to keep two sets of books reflecting staffing levels. One book contained accurate information regarding the actual hours nursing staff provided direct resident care while the other contained falsified information that made it appear as though MLRWC had higher staffing levels.

26. It was further a part of the conspiracy that the defendant, SUSAN GILBERT and/or co-conspirators directed administrative staff to provide the falsified staffing documents to DOH investigators during the course of federally-mandated inspections to make it appear as though MLRWC met federal- and state-mandated staffing requirements.

27. It was further a part of the conspiracy that the defendant, SUSAN GILBERT and/or other co-conspirators engaged in the above-described acts in order to make it appear as though the facility was in compliance with the conditions of participation for Medicare and PA Medicaid, including the condition that the facility had "sufficient" nursing staff to meet residents' needs and that the facility was operating and providing services in compliance with all applicable Federal, State, and local laws, regulations, and codes.

## OVERT ACTS

28. In furtherance of the conspiracy, and in order to affect the object thereof, the defendant, SUSAN GILBERT and/or other co-conspirators in the Western District of Pennsylvania and elsewhere, did commit and cause to be committed, the following overt acts, among others:

On or about the dates listed below, the defendant, SUSAN GILBERT and/or other co-conspirators submitted and caused to be submitted to DOH surveyors the following false and fraudulent records and documents, each of which constitutes a separate overt act:

| Date | Document Title | Falsification |
|---|---|---|
| 10/10/2018 | Nursing care hours form | Record provided to DOH during survey falsely inflated actual PPD levels. |
| 10/10/2018 | Three-week Nursing Time Schedule | Record provided to DOH during survey falsely represented that certain employees provided direct resident care when they did not. |
| 10/2/2019 | Nursing care hours form | Record provided to DOH during survey falsely inflated actual PPD levels. |
| 10/2/2019 | Three-week Nursing Time Schedule | Record provided to DOH during survey falsely represented that certain employees provided direct resident care when they did not. |
| 11/13/2019 | Nursing care hours form | Record provided to DOH during survey falsely inflated actual PPD levels. |
| 11/13/2019 | Three-week Nursing Time Schedule | Record provided to DOH during survey falsely represented that certain employees provided direct resident care when they did not. |
| 1/3/2020 | Nursing care hours form | Record provided to DOH |

|  |  | during survey falsely inflated actual PPD levels. |
|---|---|---|
| 2/20/2020 | Nursing care hours form | Record provided to DOH during survey falsely inflated actual PPD levels. |
| 2/20/2020 | Three-week Nursing Time Schedule | Record provided to DOH during survey falsely represented that certain employees provided direct resident care when they did not. |

In violation of Title 18, United States Code, Section 371.

## COUNT TWO

The grand jury further charges:

29. Paragraphs 1 through 28 at Count One are hereby incorporated by reference as if re-alleged herein.

### THE SCHEME AND ARTIFICE

30. From on or about October 10, 2018, and continuing thereafter to on or about February 20, 2020, in the Western District of Pennsylvania and elsewhere, the defendant, SUSAN GILBERT, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud health care benefit programs, that is Medicare and PA Medicaid, and to obtain, by means of false and fraudulent pretenses, representations and promises, money and property owned by and under the control of such health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, which scheme and artifice to defraud and to obtain money and property was in sum and substance as follows:

31. It was a part of the scheme and artifice that the defendant, SUSAN GILBERT, individually and by aiding and abetting others, submitted, or caused to be submitted, false and fraudulent information about MLRWC's staffing levels to DOH during the course of federally-mandated surveys.

32. It was a part of the scheme and artifice that the defendant, SUSAN GILBERT, engaged in acts in order to falsely inflate MLRWC's PPD numbers and thereby certify to DOH that the facility was in compliance with the conditions of participation for Medicare and PA Medicaid, including meeting federal and state staffing requirements.

### EXECUTION

33. From on or about October 10, 2018, and continuing thereafter to on or about February 20, 2020, in the Western District of Pennsylvania and elsewhere, the defendant, SUSAN

GILBERT, did knowingly and willfully execute and attempt to execute, the aforesaid scheme and artifice.

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT THREE

The grand jury further charges:

34. Paragraphs 1 through 28 at Count One are hereby incorporated by reference as if re-alleged herein.

35. From on or about October 10, 2018, and continuing thereafter to on or about February 20, 2020, in the Western District of Pennsylvania and elsewhere, the defendant, SUSAN GILBERT, with intent to deceive and defraud the United States, endeavored to influence, obstruct, and impede a Federal auditor, namely a DOH surveyor, a person employed on a full- or part-time or contractual basis, to perform an audit and a quality assurance inspection for and on behalf of the United States, in the performance of official duties relating to an entity, namely MLRWC, that received in excess of $100,000, directly and indirectly, from the United States in a one-year period, under a contract, subcontract, grant, and cooperative agreement.

All in violation of Title 18, United States Code, Sections 1516 and 2.

A True Bill,

*[signature]*
FOREPERSON

*[signature]*

SCOTT W. BRADY
United States Attorney
PA ID No. 88352