IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Criminal No. 21-79-RJC |
| vs. | ) |
| | ) Judge Robert J. Colville |
| SUSAN GILBERT, SAM HALPER, EVA HAMILTON, MICHELLE ROMEO, JOHNNA HALLER, COMPREHENSIVE HEALTHCARE MANAGEMENT SERVICES, LLC, d/b/a Brighton Rehabilitation and Wellness Center, and MT. LEBANON OPERATIONS, LLC d/b/a Mount Lebanon Rehabilitation and Wellness Center | ) ) ) ) ) ) ) ) ) |

## **MEMORANDUM OPINION**

Before the Court is Defendants, Sam Halper, Michelle Romeo, and Johnna Haller's (hereinafter "Defendants") Motion for a Bill of Particulars (ECF No. 202) along with the Brief in Support ("Mot.") (ECF No. 203). The Government filed a Response ("Resp.") (ECF No. 212) in Opposition to Defendants' Motion and Defendants filed a Reply ("Reply") (ECF No. 215). Then, following the Court's motion hearing on April 10, 2023 (ECF No. 229), the Government filed an Addendum to its Response in Opposition ("Addendum") (ECF No. 227). Based on this Addendum, the Court Ordered additional briefing from the parties. Defendants filed a Supplemental Brief in Support of their Motion for a Bill of Particulars ("Sup. Br.") (ECF No. 230), the Government filed a Response in Opposition to Defendants' Supplemental Brief ("Sup. Resp.") (ECF No. 234), and Defendants filed a Reply in Support of their Supplemental Brief ("Sup. Reply") (ECF No. 237).

**I.    Discussion**

On August 15, 2022, a 15-count superseding indictment was returned against defendants, Sam Halper, Eva Hamilton, Susan Gilbert, Michelle Romeo, Johnna Haller, Comprehensive

1

Healthcare Management Services, LLC ("CHMS"), and Mt. Lebanon Operations, LLC.  Counts 1-13 detail staffing falsification schemes and Counts 14 and 15 detail a billing falsification scheme.  In sum, the staffing falsification schemes allege that defendants submitted falsified staffing records concerning the number of staff and the number of hours staff provided care in order to show that defendants had sufficient staff to receive Medicare and Pennsylvania Medicaid.  Further, the billing falsification scheme alleges that Defendants falsified resident records to make the residents' health seem worse than it was and increase treatment needs in order to get inflated reimbursements from Medicare and Pennsylvania Medicaid.  Counts 1-13 are brought, in general, against defendants Halper, Hamilton, Gilbert, Comprehensive Healthcare Management Services, LLC, and Mt. Lebanon Operations, LLC.  Count 14 is brought against Defendants Halper, Romeo, and Haller and Count 15 is brought against defendants Romeo and Haller.

Defendants argue that a Bill of Particulars is needed to obtain necessary information from the Government concerning Counts 14 and 15.  Mot. 1-2.

## I.   Background

As background, the CHMS facilities were required to submit a Minimum Data Set ("MDS") form to CMS for all residents upon each resident's admission and then quarterly thereafter.  Superseding Indictment, ¶ 82, ECF No. 49.  The MDS provided a comprehensive assessment of each resident's functional capacities, health problems, and individual plan of care.  *Id.* at ¶ 83.  Medicare reimbursements were determined based on the information provided in the MDS and were limited based on the time a resident was in the facility.  *Id.* at ¶ 88.  As for Medicaid reimbursements, DHS calculated a PA Medicaid Case Mix Index ("CMI") which was a score reflecting the clinical/functional status of all Medicaid-approved residents at the facility who fell into Resource Utilization Group ("RUG") groups.  *Id.* at ¶ 89.  DHS would then rely on the

CMI and RUG scores to determine reimbursements. *Id.* A resident's RUG group is based on numerous categories, including a resident's ADL score, depression score based on responses to a Patient Health Questionnaire-9 ("PHQ-9"), or the number of medical orders/visits reflected in the MDS form. *Id.* at ¶ 90-92.

The Superseding Indictment alleges that Defendants submitted false and fraudulent information in the MDS data in order to receive inflated Medicare and Medicaid reimbursements. Specifically, it alleges that Halper, Romeo, and Haller (1) instructed staff to change MDS data to ensure the facilities had a score of 1.2 or above and (2) instructed staff to change MDS data to reflect that the facilities had fewer residents with RUG scores associated with lower reimbursements. In order to accomplish these goals, the Superseding Indictment alleges that Defendants "conspired to enter inaccurate data regarding resident assessments, also called Minimum Data Sets (MDS) assessments, to falsely inflate the needs of residents to increase reimbursements, as well as to allegedly commit a laundry list of additional disparate acts, including directing staff to make false notes about resident interviews to justify changes to MDS data; failing to correct documentation showing residents were on oxygen when they no longer were; incorrectly dating Notices of Medical Eligibility for PA Medicaid benefits so that residents would not be included in CMI calculations; pressuring medical provides to change diagnoses in resident MDS data to justify unnecessary prescriptions; pressuring staff to provide unnecessary therapy services to residents; and unnecessarily delaying residents' discharges to maintain a higher occupancy rate." Mot. 2 (internal citations omitted). Further, Count 15 "is a substantive health care fraud count directed only at [defendants] Romeo and . . . Haller based upon their alleged involvement in the submission of false information to receive higher reimbursements from Medicare and Medicaid." *Id.*

## II. Discussion

Defendants argue that while the superseding indictment "identifies a wide variety of types of data that are alleged to have been fraudulently entered on the MDS assessments," along with other allegations, it only "describes the data items and types of resident information . . . in generic terms, without specifying the exact records claimed to be inaccurate, or the residents purportedly affected." *Id.* at 3. Further, Defendants argue the Superseding Indictment does not identify requests for medical reimbursement payments, the identity of any allegedly false billing, or any details concerning the alleged false MDS data at all. *Id.*

Therefore, Defendants request that the Government identify in a bill of particulars: "(1) the name of each resident whom the government contends was affected by the alleged conduct; and (2) for each alleged false and fraudulent claim submitted to Medicare and PA Medicaid: (a) the data that was inaccurate, (b) who entered the inaccurate information; (c) the date of the claim; (d) the resident associated with the claim; (e) the amount of the claim; and (f) the amount of money received by CHMS as a result of the claim." *Id.* Defendants argue that this information is necessary because the Superseding Indictment does not provide Defendants the required factual information to allow them to prepare their defense. *Id.* at 5-7. Defendants further argue that this is true even though the Government has provided substantial discovery as disclosure of mountains of discovery is not a substitute for a bill of particulars "when the disclosure does not provide guidance regarding what the government would prove at trial." *Id.* at 7 (citing *United States v. Stocker*, Crim. No. 89-00463-01, 1990 WL 157153, at *1 (E.D. Pa. Oct. 10, 1990)).

The Government argues that Defendants are not entitled to the information they request in a bill of particulars. Resp. 5-6. The Government further argues that this is especially true given the amount of discovery already disclosed to Defendants. *Id.* 6-10. The Government argues that

4

it provided "open file" discovery that included "thousands of pages of early disclosed *Jencks* material, including witness interviews and grand jury transcripts" as well as "all witness testimony from the grand jury." *Id.* at 6.  Further, the Government assembled the records and witness statements into PowerPoint presentations that counsel for the Government presented to defense counsel during "reverse proffer" sessions.[1]  *Id.*  These reverse proffer sessions included "records of specific patient information, relevant dates, and an explanation of how those records supported the charges."  *Id.* at 7.  Lastly, the Government provided Defendants "access to a searchable, electronic records management system, PointClickCare (PCC), which was used by the CHMS facilities as their patient records system."  *Id.* at 9.  Therefore, the Government argues Defendants have more than enough information to prepare their defense.  *Id.*

The parties presented oral arguments concerning the Motion for a Bill of Particulars at an April 10, 2023 motion hearing.  Defendants argued in sum that they are unable to prepare a defense and will be surprised at trial if the motion for a bill of particulars is not granted because the Superseding Indictment and discovery do not sufficiently describe the nature of the charges against them.  Transcript p. 28, ECF No. 229.  Defendants explained that the scheme alleged in Counts 14 and 15 covers "seven years at 16 different facilities, potentially implicating approximately 20,000 patients or home residents."  *Id.* at 29.  Defendants argued that the indictment does not identify specific data items that are false or patients whose records were changed.  *Id.* at 31.  Further, Defendants argue they cannot identify which data points are false or which patients' records were changed just by looking at the discovery provided by the Government.  *Id.* at 45.

The Government argued at the motion hearing that Defendants have been provided all discovery, beyond what is required, and have the ability to learn what data is false and what

---

[1] The Court and Defendants received copies of these reverse proffer binders that were filed under seal by the Government.  *See* Addendum; *see also* Sup. Resp., Ex. 3.

patients' records were changed. *Id.* at 39. Further, the Government argued that it identified specific instances of false data during the reverse proffer sessions and explained the methodology it used to determine what data was false to defense counsel during the reverse proffer sessions. *Id.* The government explained that its investigation is still ongoing, and it may identify additional false data points or changed patient records in addition to the ones disclosed during the reverse proffer sessions. *Id.* at 43. Lastly, the Government argued granting a bill of particulars would require the Government to provide information it will never have to allege or produce to prove its case. *Id.* at 48.

Following the motion hearing, the Government provided the Court and Defendants with copies of the PowerPoints utilized during the reverse proffer sessions. *See* Addendum; *see also* Sup. Resp., Ex. 3. The parties filed additional briefing addressing the information in this filing. Defendants argue that even with the receipt of the reverse proffer binders the Court should still grant their motion for a bill of particulars. Specifically, Defendants argue that (1) the reverse proffer documents do not include any methodology to allow Defendants to determine what data is allegedly false; (2) the disclosure of a methodology is not a substitute for the factual information Defendants need to prepare a defense, and (3) the Government may rely on additional allegedly false data points that are not identified in the reverse proffer documents. Sup. Br. 3. The Government disagrees. Sup. Resp.

> Federal Rules of Criminal procedure 7(f) provides that:
>
> The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment, or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

Fed. R. Crim. P. 7(f).

As this Court has explained:

6

> A bill of particulars is a "'formal, detailed statement of the claims or charges brought by a plaintiff or a prosecutor.'" *United States v. Urban*, 404 F.3d 754, 771-772 (3d Cir. 2005) (quoting Black's Law Dictionary 177 (8th ed. 2004)). "The purpose of a bill of particulars is 'to inform the defendant of the nature of the charges brought against him, to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense.'" *United States v. Addonizio*, 451 F.2d 49, 63-64 (3d Cir. 1972). "Only where an indictment fails to perform these functions, and thereby 'significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial,' will we find that a bill of particulars should have been issued." *Urban*, 404 F.3d at 771-772 (quoting *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989) (citing *Addonizio*, 451 F.2d at 62-63)). . . . A "bill of particulars is not a discovery tool by which defendants obtain disclosure of every detail of the theory and preparation of the Government's case." [*U.S. v. Cardillo*, Criminal Action No. 13-121-2, 2015 WL 3409324, at *5 (D. N.J. May 27, 2015).]

*United States v. Pollard*, Criminal No. 20-29, 2023 WL 3569857, at *4 (W.D. Pa. May 19, 2023). Further, "[a] bill of particulars is 'not intended to provide the defendant with the fruits of the government investigation . . . Rather, [it is] intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation.'" *U.S. v. Salko*, No. 1:07-CR-0286, 2008 WL 4006747, at *10 (M.D. Pa. Aug. 26, 2008) (citing *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985)).

The Court has broad discretion when deciding whether to grant a motion for a bill of particulars and must "strike a prudent balance between the defendant's legitimate interest in securing information concerning the government's case and numerous countervailing considerations ranging from the personal security of witnesses to the unfairness that can result from forcing the government to commit itself to a specific version of the facts before it is in a position to do so." *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989). "Moreover, in assessing the necessity of a bill of particulars, the Court also considers any information conveyed to a defendant beyond the allegations in the indictment, and notes that 'access to discovery further

7

weakens the case for a bill of particulars.'" *United States v. Hvizdzak*, Criminal No. 21-30E, 2022 WL 295879, at *2 (W.D. Pa. Feb. 1, 2022) (citing *U.S. v. Urban*, 404 F.3d 754, 772 (3d Cir. 2005)).

The Court finds, after reviewing all of the case law cited by the parties, that given the information in the Superseding Indictment, the ample discovery provided by the Government, the reverse proffer sessions, and the information contained in the reverse proffer binders, Defendants have been provided sufficient information about the charges brought against them to allow them to adequately prepare for trial.

To begin, the Court finds that the Superseding Indictment sufficiently alleges the required elements of 18 U.S.C. §§ 1349 and 1347 in support of counts 14 and 15 respectively. The Court acknowledges Defendants' argument that the Superseding Indictment fails to allege specific overt acts committed by Defendants. However, first, as argued by the Government, there is no requirement that the Government allege an overt act committed in furtherance of a conspiracy when pleading a charge under § 1349. *See* Sup. Resp. 6-7; *see also United States v. Berger*, Criminal No. 09-308, 2010 WL 4237925, at *4 (W.D. Pa. Oct. 21, 2010) (holding that 18 U.S.C. § 1349 does not include an overt act requirement). Further, under § 1347 the Government sufficiently alleged that the fraudulent scheme was executed on at least one occasion. *See United State v. Anand*, Criminal Action No. 19-518, 2022 WL 6755821, *5 (E.D. Pa. Oct. 11, 2022) (finding the indictment was sufficient because it provided that the fraudulent scheme was executed on at least one occasion). Second, even if there was such a requirement, the Government engaged in reverse proffer sessions by which it identified 34 overt acts. *See* Addendum, *see also* Sup. Resp., Ex. 3. Also, the Government has provided Defendants with extensive discovery by which

they can identify any additional overt acts, which the Government is still in the process of identifying itself.[2]  *See* Transcript, p. 43.

Next, while Defendants argue that they cannot identify specific instances of fraud from the discovery materials provided, the Court disagrees.  As argued by the Government, the reverse proffer binders sufficiently identify the methodologies used by the Government in determining what records and entries are purportedly fraudulent.  Further, Defendants have access to ample discovery, including the patient medical records, that will allow them to use these methodologies to identify further specific instances of fraud.

Therefore, the Court denies Defendants' motion for a bill of particulars because Defendants have been provided extensive discovery which provides Defendants with the necessary information concerning the charges against them.  *See Anand*, 2022 WL 6755821, at *6 (denying motion for a bill of particulars because the government provided extensive discovery by which the defendant could obtain the information he requested); *see also United States v. Pollard*, Criminal No. 20-29, 2023 WL 3569857, at *5 (W.D. Pa. May 19, 2023) (finding that a bill of particulars was not necessary when the indictment sufficiently gave notice of the essential facts and the defendant was provided significant discovery); *see also United States v. McGill*, No. 12-112-01, 2016 WL 48214, at *7-8 (E.D. Pa. Jan. 5, 2016) (denying motion for a bill of particulars where he Government provided extensive discovery including statements of nurses, patient charts, summary charts identifying fraudulent claims, and an affidavit of an FBI agent describing the facts).

While the Court does not find that a bill of particulars is necessary given the above, the Court does note that the Government has offered to provide Defendants with its "exhibits

---

[2] The Government explained that identifying specific instances of fraud is an ongoing process.  Transcript, p.43.  The Government has already identified 34 instances of fraud and admits that there may be substantially more; however, it is still in the process of identifying additional instances of fraud.  *Id.*

pertaining to the[] falsifications prior to the Court's formal exhibit deadline." Sup. Resp. 5. Specifically, the Government has offered that it will attempt to provide these exhibits 30 days in advance of any formal exhibit deadline. *Id.* at n.7. In light of the Government's willingness to engage in an earlier exchange of exhibits pertaining to the specific instances of fraud, the Court finds further reason to not order a bill of particulars and will, of course, set such a deadline at the time it issues its pretrial Order.

### III.     Conclusion

For the reasons stated above, the Court will deny Defendants' Motion for a Bill of Particulars. An appropriate Order of the Court will follow.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: August 29, 2023

cc: All counsel of record